# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEIL REYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18-cv-2065 |
| v. | ) |
| | ) Hon. Charles R. Norgle |
| DEPUTY CHIEF BOBBY WALKER, et al., | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Plaintiff Neil Reyes ("Plaintiff") brings the instant action against Deputy Chief Bobby Walker ("Walker"), Commander Todd Law ("Law"), and Soo Line Railroad Company d/b/a Canadian Pacific ("Canadian Pacific"), (collectively, "Defendants") for their alleged tortious conduct. Before the Court is Defendants Walker and Law's motion to dismiss Counts I-V of Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. **BACKGROUND**[1]

Plaintiff, an Asian male, was a police officer for Soo Line Railroad, a United States subsidiary of Canadian Pacific. Plaintiff worked at Canadian Pacific's Bensenville Intermodal Terminal ("Bensenville Terminal") located in Franklin Park, Illinois. Canadian Pacific's Police Services ("Canadian Pacific Police") is a railway law enforcement agency. Plaintiff began working with Canadian Pacific Police in 2010 as a special agent and was promoted to sergeant in 2012. In his role a railway law enforcement agent, Canadian Pacific issued Plaintiff a firearm. At all relevant times, the Bensenville Terminal had the only minority special agents in the entire

---
[1] For the purposes of a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts in the FAC as true. Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 504 (7th Cir. 2013).

United States. In 2016, Walker was the highest-ranking railway officer in the United States and Law was the commander to whom Plaintiff reported.

Plaintiff alleges that he received disparate treatment compared to the sergeants who were white. This treatment included completing menial tasks, e.g., made to go to the grocery store to purchase drinks and refreshments, pick up donuts, take Law's vehicle to the carwash, and act as a personal valet for the Walker family. Plaintiff also alleges that Law told him that "white males with blonde hair and blue eyes would typically be more successful in the workplace" and that Plaintiff should read some books to improve his other strengths. FAC at ¶¶ 145, 146.

Plaintiff further avers that after he was promoted to sergeant, his compensation and benefits were less than his non-Asian counterparts. Plaintiff also received less vacation time than his non-Asian counterparts. Plaintiff claims that Bruce Nichols, a white male and subordinate of Plaintiff, had less experience and yet received more vacation time, as well as other fringe benefits. Additionally, Plaintiff was assigned responsibilities that his non-Asian predecessors were not required to complete despite all those predecessors being paid significantly more.

On November 9, 2016, Plaintiff had a conversation with Law to discuss Canadian Pacific's new policy that special agents would not be allowed to hold secondary employment. FAC Ex. D, at 8. Plaintiff had requested an extension of time before the new policy applied to him because he and his wife were expecting a child. Canadian Pacific denied Plaintiff's request. Plaintiff told Law that as a result of the denial of his extension request, he was stressed out. Law allegedly suggested that Plaintiff start his vacation early, which was planned for the following week. Plaintiff said "[he] could not afford to go on vacation and that [he] would be better off if he jumped in front of a train and won the [Canadian Pacific] lottery (the "Train Statement"). Id. Plaintiff avers that this was a common joke among Canadian Pacific Police. After the Train

Statement, Plaintiff states that he continued to converse with Law and began to discuss the unequal pay and treatment Plaintiff faced compared to white sergeants at Canadian Pacific Police. At this point, Law ended the conversation and drove Plaintiff home, before his shift ending.

After dropping Plaintiff off, Law approached Walker to discuss Plaintiff and his statement about jumping in front of a train. Plaintiff claims that at this time Law and Walker conspired to make false statements about Plaintiff, i.e., he is suicidal, with the intent to discredit him and get him terminated from Canadian Pacific. Around 3 p.m. on November 9, 2016, Law told Jesus Ramos ("Ramos") and Ben Pepich ("Pepich") that Plaintiff was suicidal, that he had threatened to kill himself, and that he was sent home early as a result. Within days Plaintiff's Canadian Pacific Police issued firearm was taken from him and he was placed on leave. Law informed Plaintiff that he would be required to undergo an assessment of his fitness in order to return to work.

On November 21, 2016, Plaintiff completed his fitness assessment, which concluded that Plaintiff was emotionally stable and could return to work without restriction. On November 23, 2016, Canadian Pacific informed Plaintiff that it had received his paperwork and forwarded it to Law. On December 21, 2016, Plaintiff was informed that he exceeded his 2016 performance objectives. However, on January 4, 2017, Plaintiff was terminated. Plaintiff states that he was not afforded any pre or post-deprivation procedures, as he was entitled to. Plaintiff claims that Law and Walker had an active role in the decision to terminate Plaintiff's employment, and that they were motivated to do so on the basis of Plaintiff's race and in retaliation for Plaintiff's complaints of discrimination.

3

In 2016, Plaintiff also worked part-time at Triton College as a security officer. On or around December 21, 2016, Plaintiff alleges Law called Plaintiff's supervisors at Triton College (the "Triton Supervisors") and informed them that Plaintiff was on leave with Canadian Pacific and that Plaintiff was suicidal. Plaintiff alleges that Law contacted Plaintiff's supervisors with the intent to get Plaintiff terminated from Triton College.

Plaintiff's FAC sets forth five counts against Defendants Law and Walker; and five separate counts against Canadian Pacific. Plaintiff alleges that Law and Walker engaged in: conspiracy to commit defamation *per se* (Count I); tortious interference with an economic advantage (Count II); intentional infliction of emotion distress ("IIED") (Count III); false light invasion of privacy (Count IV); and violations of 42 U.S.C. § 1981 (Count V). Defendants Law and Walker now move to dismiss Counts I through V of Plaintiff's FAC pursuant to Rule 12(b)(6).

## II. ANALYSIS

### A. Standard of Review

A motion under Rule 12(b)(6) tests the sufficiency of the complaint under the plausibility standard, Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007), not the merits of the suit. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). "[A] plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) (quoting Twombly, 550 U.S. at 556). "To meet this plausibility standard, the complaint must supply 'enough fact to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." Id. at 935. (quoting Twombly, 550 U.S. at 556).

In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in a plaintiff's complaint and draws all reasonable inferences in his favor. Burke, 714 F.3d at 504 (citations omitted). "[T]he complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." EEOC v. Concentra Health Servs., 496 F.3d 773, 776 (7th Cir. 2007).

### B. Law's Statements are Defamatory *Per Se*

Plaintiff claims that Law and Walker conspired to commit defamation *per se* against him with the intention to get Plaintiff terminated from Canadian Pacific. Before addressing the conspiracy allegation of Count I, the Court turns to whether the alleged statements that Law allegedly made to Ramos, Pepich, and the Triton Supervisors were defamatory *per se*. "To make out a claim for defamation, the plaintiff must set out sufficient facts to show that the defendants made a false statement concerning him, that there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiff." Krasinski v. United Parcel Serv., Inc., 530 N.E.2d 468, 471 (Ill. 1988). "A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." Kolegas v. Heftel Broad. Corp., 607 N.E.2d 201, 206 (1992)

To state a claim for defamation *per se* the alleged defamatory statements must fall into one of four categories: "(1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute the inability to perform or want of integrity in the discharge of duties or office or employment; or (4) words that prejudice a party, or impute a lack of ability, in his trade, profession or business." Swick v. Liautaud, 662 N.E.2d 1238, 1245 (Ill. 1996). With defamation *per se* "[t]he words themselves

5

are considered to be so obviously and inevitably hurtful to the plaintiff that damage to his reputation may be presumed." Mittelman v. Witous, 552 N.E.2d 973, 982 (1989).

Here, Plaintiff alleges that Law informed Pepich, Ramos, and the Triton Supervisors that Plaintiff was suicidal, he had threatened to kill himself, and that he was sent home early as a result. Plaintiff argues that these statements imputed an inability to perform his duties, or imputed his lack of ability to perform. See Pippen v. NBCUniversal Media, LLC, 734 F.3d 610, 613 (7th Cir. 2013) (explaining that inability to perform his duties "seems to imply some sort of on-the-job malfeasance" whereas lack of ability to perform "covers suitability for a trade or profession."). Defendants respond by arguing that the alleged statements are not defamatory because they relate to Plaintiff's character, not his job performance. Cody v. Harris, 409 F.3d 853, 858 (7th Cir. 2005) (Generally, "attacks related to personal integrity and the character have not been deemed defamatory *per se*.").

For the purposes of this motion, the Court disagrees with Law and Walker's argument. As alleged, Law informed Pepich, Ramos, and the Triton Supervisors that Plaintiff was sent home early because he was suicidal. These statements convey that Plaintiff was unable to perform his required job duties because he was suicidal, and thus he was relieved of his duties and sent home early. The events after Plaintiff made the Train Statement further support this interpretation. After Plaintiff made the Train Statement, Law and Walker took away Plaintiff's Canadian Pacific Police issued firearm and placed him on leave. While on leave, Plaintiff received a letter stating that since he was in a "safety sensitive position" he would need to be cleared by a treating medical provider prior to returning to work. FAC, Ex. D, at 8. Plaintiff's allegations sufficiently demonstrate that Law's statements that Plaintiff was suicidal imputed his ability to perform his job. See Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1226 (7th Cir.

6

1993) ("Illinois courts (and federal courts when interpreting Illinois law) have been quick to find implications of criminal conduct or of employee or business misconduct in statements that might have seemed susceptible of an interpretation that would have taken them out of the *per se* categories.") (internal citation omitted) (citing cases). Accordingly, Plaintiff has sufficiently alleged that Law's statements were defamatory *per se*.

Next, Law and Walker argue that even if Law's statements qualify as defamation *per se* category, Plaintiff fails to demonstrate that Law's statements were unprivileged. This argument is not well taken in a Rule 12(b)(6) motion. "A qualified privilege is an affirmative defense to a defamation claim." Babb v. Minder, 806 F.2d 749, 753 (7th Cir. 1986). "[The Seventh Circuit has] held many times that, because complaints need not anticipate defenses, Rule 12(b)(6) is not designed for motions under Rule 8(c)(1)." Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012). As such, "there is no need for a plaintiff to plead facts showing that a communication is not privileged in order to properly allege a cause of action for defamation." Walker v. Braes Feed Ingredients, Inc., No. 02 C 9236, 2003 U.S. Dist. LEXIS 25108, at *22 (N.D. Ill. Apr. 3, 2003). Where the complaint affirmatively shows the statement is protected by privilege, a motion to dismiss may raise the issue of privilege. However, there has been no such showing here. See Beasley v. St Mary's Hospital, 558 N.E. 2d 677 (Ill. 1990) (similar facts). Moreover, it is incumbent upon the Defendant to show a qualified privilege. Coghlan v. Beck, 984 N.E.2d 132, 147 (Ill. App. 2013).

Turning now to the conspiracy element of Count I, Plaintiff alleges that Law and Walker conspired to make false statements about Plaintiff. The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance

7

of which one of the conspirators committed an overt tortious or unlawful act. Fritz v. Johnston, 807 N.E.2d 461, 470 (Ill. 2004). Plaintiff alleges that Law and Walker met on November 9, 2016, between 1:00 p.m. and 3:00 p.m. and agreed to make deceitful statements regarding Plaintiff. The aim of these statements was to get Plaintiff terminated from Canadian Pacific. Law and Walker desired to terminate Plaintiff based on Plaintiff's race and in retaliation for Plaintiff's complaints of discrimination. In furtherance of this agreement, Law told Ramos and Pepich that Plaintiff was suicidal and was sent home as a result. Further, for the purposes of a claim for civil conspiracy, it is sufficient that only Law made the defamatory remarks. American Hardware Mfrs. Ass'n v. Reed Elsevier, Inc., No. 03 CV 9421, 2010 WL 55708, at 10 (N.D. Ill. Jan. 4, 2010) ("Liability for civil conspiracy is joint and several, and only one tortfeasor need commit the overt act in order for bother parties to be liable for civil conspiracy[.]"). These allegations, viewed in the light most favorable to Plaintiff, are sufficient to allege a conspiracy to defame Plaintiff.

However, Plaintiff fails to allege a conspiracy to defame against Walker as it pertains to the alleged statements Law made to the Triton Supervisors. Plaintiff does not allege any agreement between Walker and Law to make deceitful statements to the Triton Supervisors. Thus, Law's alleged defamatory statements to the Triton Supervisors are actionable as it pertains to Law but not Walker. Plaintiff has sufficiently alleged conspiracy to defame against both Law and Walker with regard to the alleged defamatory statements Law made to Canadian Pacific employees.

### C. Law Intentionally Interfered with Plaintiff's Employment with Triton College

In Count II, Plaintiff alleges tortious interference with economic advantage against Law and Walker. To state a claim for tortious interference with prospective economic advantage,

Plaintiff must show: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." Borsellino v. Goldman Sachs Grp., Inc., 477 F.3d 502, 508 (7th Cir. 2007) (citing Voyles v. Sandia Mortgage Corp.,751 N.E.2d 1126, 1133-34 (Ill. 2001)). A reasonable expectation of continued employment can be the basis for a tortious interference in business relationship claim. Redd v. Nolan, 663 F.3d 287, 291 (7th Cir. 2011); see James v. Intercontinental Hotels Grp. Res., Inc., No. 09-CV-781, 2010 WL 529444, at 3 (N.D. Ill. Feb. 10, 2010) ("In Illinois, the terms 'tortious interference with business relations' and 'tortious interference with prospective economic advantage' are interchangeable.").

Plaintiff's alleged at will employment with Triton College creates a reasonable expectation of continued employment. Anderson v. Anchor Org. for Health Maint., 654 N.E.2d 675, 685 (Ill. App. 1995) ("Until terminated, the relationship created by a contract terminable at will is subsisting and will presumptively continue in effect so long as the parties are satisfied."); Kemper v. Worcester, 435 N.E.2d 827, 831 (Ill. App. 1982) (holding that an at will employment relationship is sufficient to support an action for tortious interference). Plaintiff alleges that Law intentionally interfered with Plaintiff's employment with Triton College when he told the Triton Supervisors that Plaintiff was suicidal and on leave from Canadian Pacific. Defendants argue that Plaintiff fails to sufficiently allege that Law's statements caused Plaintiff to be suspended by Triton College. The Court disagrees. Plaintiff alleges that shortly after Law's statements to the Triton Supervisors, Plaintiff was placed on indefinite suspension from Triton College. The Court finds that the temporal relationship Plaintiff alleges is sufficient to infer causation to withstand

9

the present motion to dismiss. In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig., 155 F. Supp. 3d 772, 815 (N.D. Ill. 2016) ("[A] finding of proximate cause is generally a fact question for the jury and less amenable to resolution on a motion to dismiss."). The Court finds that Plaintiff has sufficiently alleged tortious interference with economic advantage against Law.

However, similar to Count I, Plaintiff fails to sufficiently allege tortious interference with economic advantage against Walker. Plaintiff does not allege that Walker took any action to contact Triton College or otherwise intentionally interfere with Plaintiff's employment with Triton College. For these reasons, Count II as it pertains to Walker is dismissed with prejudice.

## D. Law and Walker's Alleged Conduct was not Extreme and Outrageous.

Plaintiff claims that Law and Walker conspiring and working together to get Plaintiff fired was extreme and outrageous with the intent to inflict emotion distress upon Plaintiff. "Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if she establishes that (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." Richards v. United States Steel, 869 F.3d 557, 566 (7th Cir. 2017) (citing Feltmeier v. Feltmeier, 798 N.E.2d 75, 80 (Ill. 2003). To establish the first element, Plaintiff must show the conduct as "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of human decency." Oates v. Discovery Zone, 116 F.3d 1161, 1174 (7th Cir. 1997). "It is clear that the tort 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Schweihs v. Chase Home Fin., LLC, 77 N.E.3d 50, 63 (Ill. 2016) (quoting

Restatement (Second) of Torts § 46 cmt. d), nor conduct that is "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair." Oates v. Discovery Zone, 116 F.3d 1161, 1174 (7th Cir. 1997). Rather, IIED is reserved for conduct that is to "be regarded as atrocious, and *utterly intolerable* in a civilized community." Schweihs, 77 N.E.3d at 63 (emphasis added).

Plaintiff's IIED claim arises from alleged conduct that occurred in the employment setting. "Liability for emotional distress ... as a common-law tort, is even more constrained in the employment context." Richards v. United States Steel, 869 F.3d 557, 567 (7th Cir. 2017). "Illinois courts have limited recovery to cases in which the employer's conduct has been truly egregious." Id. (citing Van Stan v. Fancy Colours & Co., 125 F.3d 563, 568 (7th Cir. 1997)). "[T]he circumstances surrounding a typical or even an atypical employment dispute will *rarely* rise to the level of outrageous conduct." Mazeika v. Architectural Speciality Prods., No. 05 C 415, 2005 U.S. Dist. LEXIS 15531, at 14 (N.D. Ill. July 26, 2005) (emphasis added).

Here, Plaintiff's his allegations do not amount to extreme and outrageous conduct. In his Response, Plaintiff first argues that Law and Walker inflicted emotional distress by requiring him to perform menial tasks, such as picking up coffee and donuts, washing Law's car, and chauffeuring Walker's family. Pl. Resp. at 7. While such conduct may be unfair, insulting, or grounds for indignation, it does not amount to extreme and outrageous conduct. See Oates, 116 F.3d at 1174 (affirming dismissal of an African American plaintiff's IIED claim where his supervisor refused to remove a picture of a monkey with the plaintiff's name written above after concluding the refusal was not "truly extreme and outrageous."); Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993) (affirming dismissal of IIED claim where plaintiff was not allowed to supervise white subordinates, was reprimanded for no reason, forced out of her management position, falsely accused of having poor sales, was threated with discipline, had her

11

telephone call monitored through use of eaves-dropping device, and had management ignore her concerns for her property and safety after her vehicle was damaged on company property); Briggs v. N. Shore Sanitary Dist., 914 F. Supp. 245, 252 (N.D. Ill. 1996) (holding that the plaintiff's co-employees' conduct of hanging a racist doll in the plaintiff's office, subjecting her to racial slurs, excluding her from office social activities, placing her on probation, and refusing to train her properly was deplorable, but not a sufficient basis to sustain an IIED claim).

Plaintiff also alleges that Law and Walker's defamatory statements and his subsequent termination support his claim for IIED. The Court disagrees. First, regarding the alleged defamatory statements, under Illinois Law, a Plaintiff's claim of IIED generally cannot rest upon a defendant's alleged defamatory statements. Fields v. Jackson, No. 16 C 1961, 2017 WL 4150682, at 5 (N.D. Ill. Sept. 19, 2017) (citing Cook v. Winfrey, 141 F.3d 322, 331 (7th Cir. 1998) ("[Defamatory] statements generally do not clear the high hurdle for extreme and outrageous conduct."). The court in Fields determined that the defendant's social media posts accusing the plaintiff of committing criminal acts, calling her pejorative names and a con artist, were offensive and distressing, but not so extreme and outrageous to sustain an IIED claim. Fields, 2017 WL 4150682, at 6. Here, the Court finds that Law and Walker's alleged defamatory statements are comparable to those in Fields, and likewise, do not qualify as extreme and outrageous conduct. Moreover, Plaintiff points to no authority where defamatory comments supported a claim of IIED.

Finally, Plaintiff's termination does not support this IIED claim. "[T]here is general hesitation 'to find intentional infliction of emotional distress in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress,

12

nearly every employee would have a cause of action.'" Richards v. United States Steel, 869 F.3d 557, 567 (7th Cir. 2017) (quoting Naeem v. McKesson Drug Co., 444 F.3d 593, 606 (7th Cir. 2006). Accordingly, "Illinois courts generally disfavor application of the tort to employment termination." Macchia v. Loyola Univ. Med. Ctr., No. 04 C 5049, 2004 WL 2392201, at 7 (N.D. Ill. Oct. 25, 2004).

Plaintiff alleges that his termination was discriminatory and or retaliatory and thus unlawful. However, Illinois has a high standard for extreme and outrageous conduct, and even unlawful terminations generally do not support IIED claims. Jaskowski v. Rodman & Renshaw, Inc., 813 F. Supp. 1359, 1363 (N.D. Ill. 1993) (holding that the plaintiff's allegation that she was unlawfully demoted to a position earning half of her original salary when she returned from maternity leave was not sufficient support for IIED claim); see also Stoecklein v. Illinois Tool Works, Inc., 589 F. Supp. 139, 146 (N.D. Ill. 1984) (finding that allegations that the plaintiff was demoted, forced to retire due to his age, and that his employer reneged on a promise to provide 26 pay periods of severance pay and job counseling was not extreme and outrageous conduct as a matter of law).

For these reasons, Law and Walker's alleged conduct does not pass the high bar to qualify as extreme and outrageous conduct. Schweihs, 77 N.E.3d at 63; see, e.g., Clay v. Quartet Mfg. Co., 644 F. Supp. 56 (N.D. Ill. 1986) (holding that the unlawful denial of employment benefits, coercion of employee to engage in sexual relationship, offensive remarks, and unwanted touchings constituted extreme and outrageous conduct); Pavilon v. Kaferly, 561 N.E.2d 1245 (Ill. App. 1990) (holding that the defendant's conduct was extreme and outrageous where he was aware that the plaintiff was susceptible to emotional distress; he repeatedly

propositioned the plaintiff with money in exchange for sex; he threatened to kill her and rape her; and he challenged the plaintiff's right to custody of her son).

**E. The Defamatory Statement was not Placed in False Light Before the Public**

In Count IV, Plaintiff claims the tort of false light invasion of privacy against Law and Walker. Illinois law identifies three elements that are necessary to state a claim for false light invasion of privacy: (1) the plaintiff was placed in a false light before the public as a result of the defendants' action; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." Thompson v. Vill. of Monee, No. 12 C 5020, 2013 WL 3337801, at *24 (N.D. Ill. July 1, 2013) (citing Kolegas v. Heftel Broad. Corp., 607 N.E.2d 201, 209–10 (Ill. 1992); Raveling v. HarperCollins Publishers Inc., 04–2963, 2005 WL 900232 (7th Cir. Mar. 4, 2005).

Defendants argue that Law's alleged statements to Ramos, Pepich, and the Triton Supervisors that Plaintiff was suicidal is insufficient for a false light claim. The Court agrees. "[T]he heart of this tort lies in the publicity." Lovgren v. Citizens First Nat'l Bank, 534 N.E.2d 987, 989 (1989)."To be actionable, the statement must not merely be published to a third person, as in defamation, but publicized, which is defined as making the matter public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Moriarty v. Dyson, Inc., No. 09 C 2777, 2010 WL 2745969, at *4 (N.D. Ill. July 8, 2010). Law's alleged statement to the Triton College supervisors and two of Plaintiff's co-employees at Canadian Pacific does not equate to communicating to the public at large.

14

In response, Plaintiff cites Duncan v. Peterson, 947 N.E.2d 305, 317 (2010), for the proposition that a "limited publication to recipients who are in a *special relationship* with the plaintiff satisfies the publicity element." However, Plaintiff's argument ignores Seventh Circuit precedent refusing to accept special relationship reasoning where allegedly false statements were communicated to the Plaintiff's coworkers and/or supervisors. Frobose v. Am. Sav. & Loan Ass'n, 152 F.3d 602, 618 (7th Cir. 1998) ("[C]ommunications and actions between and among the employees, officers, and directors of the association, who by virtue of their positions would have a natural interest in, if not a responsibility to know about, the matters communicated" do not support a false light claim).

While some Illinois Appellate courts have accepted the special relationship reasoning, Duncan, 947 N.E.2d at 305, the Court must follow the Seventh Circuit decision in Frobose, 152 F.3d at 618. "In the absence of a superseding decision by the Illinois Supreme Court, this Court is bound by Seventh Circuit precedent." Davis v. Jewish Vocational Serv., No. 07 C 4735, 2010 WL 1172537, at 6 (N.D. Ill. Mar. 17, 2010) (citing Reiser v. Residential Funding Corp., 380 F.3d 1027, 1029 (7th Cir. 2004) (While "[intermediate state courts] could in principle persuade us to reconsider and overrule our precedent; assuredly they do not themselves liberate district judges from the force of our decisions."). Thus, the Court rejects Plaintiff's argument that it should apply the special relationship reasoning. Therefore, Plaintiff fails to allege he was placed in a false light before the public. Accordingly, his claim of false light invasion of privacy is dismissed.

## F. Plaintiff Sufficiently Alleges Law and Walker Violated § 1981.

Finally, Plaintiff alleges that Law and Walker violated § 1981. "Section 1981 prohibits discrimination in the making and enforcement of private contracts." Black Agents & Brokers

Agency, Inc. v. Near N. Ins. Brokerage, 409 F.3d 833, 837 (7th Cir. 2005). "To establish a claim under § 1981, the plaintiffs must show that (1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute[.]" Morris v. Office Max, 89 F.3d 411, 413 (7th Cir. 1996). Individual employees can be held liable under § 1981 if they participated in the unlawful conduct. Carter v. Chi. State Univ., 778 F.3d 651, 657 (7th Cir. 2015).

Law and Walker argue that Plaintiff fails to allege a § 1981 violation and fails to allege a causal relationship between Law and Walker's racially motivated actions and the adverse employment actions Plaintiff suffered. The Court disagrees. For a Title VII claim, it is sufficient for a complaint to state "I was turned down for a job because of my race." Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998). "Although section 1981 and Title VII differ in the types of discrimination they proscribe, the *methods of proof* and elements of the case are essentially identical." Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 940 (7th Cir. 1996) (emphasis added). Plaintiff alleges that he is an Asian male and was terminated as a result of his race and for voicing complaints about the discriminatory treatment he endured. See CBOCS W., Inc. v. Humphries, 553 U.S. 442, 451 (2008) (holding that § 1981 encompasses retaliation claims). Plaintiff alleges that Law and Walker were not only aware of the alleged discrimination; but had an active role in Canadian Pacific's decision to terminate Plaintiff due to his race and in retaliation for him raising concerns about racially biased conditions. See James F. Jackson v. Local 705, Int'l Bhd. of Teamsters, No. 95 C 7510, 2002 WL 460841, at *9 (N.D. Ill. Mar. 26, 2002) ("[T]he element of personal involvement may be satisfied by proof that a supervisor had knowledge of the alleged acts of discrimination and failed to remedy or prevent them."). For these reasons, Plaintiff has sufficiently alleged Law and Walker violated § 1981 by

16

discriminating against Plaintiff on the basis of his race and in retaliation to his complaints of discrimination, as it pertains to Plaintiff's termination Canadian Pacific.

Plaintiff has also sufficiently alleged that Law violated § 1981, in regards to Law's alleged statement to the Triton Supervisors that Plaintiff was placed on leave because he was suicidal. The fact that Law is not a party to Plaintiff's employment agreement with Triton College is irrelevant, as the Seventh Circuit as held that "tortious interference with contract rights violates [§] 1981 when the motivation for the interference is racial." Muhammad v. Oliver, 547 F.3d 874, 878 (7th Cir. 2008); (citing Vietnamese Fishermen's Ass'n v. Knights of Ku Klux Klan, 518 F.Supp. 993, 1007–08 (S.D.Tex.1981)) (The Ku Klux Klan violates § 1981 when they beat up nonwhites who try to enforce their contracts, despite the Klan not being a party to those contracts); see also Shaikh v. City of Chi., 341 F.3d 627, 630 (7th Cir. 2003) ("[The plaintiff] is correct in noting that a third party's interference with an individual's equal opportunity to enter into contracts … can support civil-rights claims under § 1981[.]"). This is what Plaintiff alleges: Law used his position with Canadian Pacific to interfere with, for racial reasons, Plaintiff's employment with Triton College.

As discussed throughout, Plaintiff fails to allege a connection between Walker and Triton College. Accordingly, Plaintiff's § 1981 claim against Walker fails to the extent that it is based upon Plaintiff's suspension from Triton College.

### III. CONCLUSION

Plaintiff has sufficiently alleged that Law and Walker engaged in a conspiracy to commit defamation *per se*. Plaintiff failed to allege that Walker interfered with Plaintiff's economic advantage, and thus, Walker is dismissed from Count II with prejudice. Plaintiff's IIED claim, Count III, is dismissed with prejudice. Plaintiff's false light invasion of privacy claim, Count IV,

17

is dismissed with prejudice. Finally, Plaintiff sufficiently alleged that both Law and Walker violated § 1981. For the reasons stated, Defendant Law and Walkers' motion to dismiss is granted in part and denied in part.

    IT IS SO ORDERED.

ENTER: _____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 19, 2018